IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| USA,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>PRITHVIRAJ R BHIKHA,<br><br>　　　　　Defendant. | Case No. 19-cr-00115-CRB-1<br><br>**ORDER REAFFIRMING SENTENCING FINDINGS** |

　　　　Defendant Prithviraj Bhikha has pleaded guilty to one count of conspiracy to commit wire fraud in violation of 18 U.S.C. § 1349 and one count of aiding or assisting in the preparation of a false or fraudulent tax return in violation of 26 U.S.C. § 7602(2).

　　　　On August 3, 2021, after reviewing the government, Bhikha, and Cisco's sentencing positions, the Court explained how the U.S. Sentencing Guidelines apply to Bhikha's offense. See Order Re Sentencing Findings and Restitution (dkt. 141). Under § 2B1.1(b) of the Guidelines, the offense level for fraud increases depending on the magnitude of the "loss" resulting from the fraud. But to arrive at a final loss calculation, any pecuniary harm must be "reduced by . . . the fair market value of the . . . services rendered, by the defendant or other persons acting jointly with the defendant, to the victim before the offense was detected." U.S.S.G. § 2B1.1 Cmt. 3(E)(i). Here, Bhikha received kickback payments in exchange for hiring a third-party company to negotiate lower prices on behalf of Cisco. The parties agreed that these payments ($1,150,000) constituted a loss and that Bhikha did not render any valuable services to Cisco as a result of the third-party company's kickback payment. But Bhikha also hired companies that he secretly owned to negotiate lower prices on behalf of Cisco. And although Cisco paid $10,060,000 to

Bhikha's companies, those companies provided Cisco with significant services by negotiating on behalf of Cisco with parts suppliers. See Order Re Sentencing Findings and Restitution at 5–6. Because those services appeared to have saved Cisco tens of millions of dollars, and neither the government nor Cisco provided any evidence suggesting that the fair market value of the services was less than $10,060,000, the Court concluded that this part of Bhikha's scheme did not cause any net loss and calculated Bhikha's Guidelines range accordingly. Id. at 5–8.

The Court also addressed restitution. It held that Bhikha would be required to pay $2,525,647.80 to the Internal Revenue Service for violating 26 U.S.C. § 7206(2) and $1,150,000 to Cisco based on the kickback payments that he received from the third-party company. Id. at 9. The Court acknowledged that in California, "an agent who makes a profit in connection with transactions conducted by him on behalf of the principal is under a duty to give such profit to the principal." Id. at 9 (quoting United States v. Gamma Tech Indus., Inc., 265 F.3d 917, 929 (9th Cir. 2001)). But because restitution includes only "losses directly resulting from a defendant's offense," United States v. Bussell, 504 F.3d 956, 964 (9th Cir. 2007), and because the government took the position that the amount of restitution should equal "the Guidelines loss amount determined by the Court," Gov Sentencing Memo (dkt. 126) at 14, the Court held that Bhikha was not required to pay Cisco additional restitution based on his self-dealing that caused no economic loss, see Order Re Sentencing Findings and Restitution at 9. The Court emphasized that Cisco would likely be able to "recover some or all" of the money that it paid to Bhikha's companies "in separate civil proceedings." Id.

Four days before Bhikha's sentencing hearing, Cisco asked the Court to reconsider its conclusion that Bhikha did not owe additional restitution based on his self-dealing. See Supp. Victim Impact Statement (attached to order). In the alternative, Cisco requested that the Court hold an evidentiary hearing so that Cisco could present evidence bearing on restitution, including evidence regarding how much of Bhikha's Cisco salary he "rightfully earned." Id. at 5.

The Court sentenced Bhikha consistent with its prior order. See Minute Entry (dkt. 147). The Court declined to reconsider its conclusions or hold an evidentiary hearing but informed the parties and Cisco that it would explain its reasoning in writing. See Hearing Tr. (dkt. 149) at 35. The Court stands by its prior order, incorporates it here, and addresses Cisco's new arguments below.

\*

The word "restitution" is "an ambiguous term." See Restitution, Black's Law Dictionary (10th Ed. 2009) (quoting John D. Calamari & Joseph M. Perillo, The Law of Contracts § 9-23, at 376 (3d ed. 1987)). In some contexts, "restitution" might refer to "[a] body of substantive law in which liability is based on the defendant's unjust enrichment." Id. But in the criminal context, "restitution" ordinarily means "[c]ompensation for loss . . . paid by a criminal to a victim." Id.

The Mandatory Victims Restitution Act (MVRA), a criminal sentencing statute, uses the word "restitution" in this latter sense. It provides that when an offense involves "loss . . . of property," the sentencing court "shall order" the defendant to either "return the property" or "pay an amount equal to . . . the value of the loss." 18 U.S.C. §§ 3663A(a)(1), (b)(1). In other words, the sentencing court shall determine the victim's loss resulting from the offense, then order the defendant to make the victim whole.

The MVRA does not require a sentencing court to award restitution when determining the award would unduly burden the court. A sentencing court need not order restitution "if the court finds, from facts in the record, that . . . determining complex issues of fact related to the cause or amount of the victim's losses would complicate or prolong the sentencing process to a degree that the need to provide restitution to any victim is outweighed by the burden on the sentencing process." Id. § 3663A(c)(3)(B) (the "undue burden" provision).

The MVRA's undue burden provision applies to Cisco's request that the Court hold an evidentiary hearing regarding Bhikha's Cisco salary. As Cisco explained at the hearing, such an evidentiary hearing would aim to address the percentage of work that Bhikha

devoted to his fraudulent scheme. See Hearing Tr. at 12–14. The court doubts that determining a fair, non-arbitrary percentage would be possible within a reasonable timeframe given the facts of this case. Indeed, Cisco's submission to the Court acknowledged that Cisco "is presently unable to determine how much of the $3 million that it paid Bhikha" over several years "was rightfully earned by him." Supp. Victim Impact Statement at 5. And at Bhikha's sentencing hearing, Cisco's counsel agreed with the Court that resolving that complicated question would require evidence from all sides and days of hearings. See Hearing Tr. at 12–14. After the Court raised the MVRA's undue burden provision, Cisco conceded that the provision "would preclude" holding an evidentiary hearing on the salary question. See id. at 31. Consistent with that wise concession, the Court declined to further complicate and prolong these proceedings by holding such a hearing. Id.

Cisco also challenged the Court's legal determination that, while determining Cisco's "loss" under the MVRA, the Court could consider the economic benefits that Bhikha's overseas companies provided to Cisco. See Supp. Victim Impact Statement at 3–5; Hearing Tr. at 27–28. As discussed above, the Court previously determined, based on the parties' arguments and evidence—including the government's assertion that the loss for restitution purposes should equal the loss for Guidelines range purposes—that part of Bhikha's scheme involving self-dealing did not cause Cisco any loss warranting additional restitution. See Order Re Sentencing Findings and Restitution at 5–8. In its latest submission to the Court and at Bhikha's sentencing hearing, Cisco argued that because California law entitles Cisco to Bhikha's proceeds from operating his overseas companies, the Court must award Cisco those proceeds under the MVRA. See Supp. Victim Impact Statement at 4–5; Hearing Tr. at 27–28. Cisco contended that the Court's contrary analysis ignored caselaw pertaining to "kickback payments" and "employee steal[ing]," and would lead to "absurd" results. See Supp. Victim Impact Statement at 2.

The Court disagrees. Cisco's position (i) ignores that the MVRA measures restitution by a victim's loss rather than a defendant's unjust enrichment, and (ii) conflates

4

self-dealing with distinguishable conduct like receiving kickback payments and stealing profits from a principal. Cf. Skilling v. United States, 561 U.S. 358, 410 (2010) (differentiating between kickbacks and undisclosed self-dealing). As the Court's prior order acknowledged, when an employee receives a kickback payment for awarding business to a third party, that money properly belongs to the employer. See Gamma Tech Indus, 265 F.3d at 929. And in that situation, the employee renders no service to the employer in exchange for the kickback payment (indeed, the employee renders a sort of service to the third party by directing business to the third party in exchange for the payment). When calculating the employer's "loss" resulting from the offense under the MVRA, see 18 U.S.C. § 3663A(b)(1), there is no offsetting valuable service to consider. Similarly (and to borrow an example from Cisco), when an investment manager invests a client's money and then steals a portion of the proceeds, the investment manager performs no service in exchange for the stolen proceeds. See Supp. Victim Impact Statement at 2. Again, when calculating the client's loss under the MVRA, there is no offsetting valuable service to consider. And in both examples, the victim's loss equals the defendant's unjust enrichment.

This case is different. Here, Bhikha did not receive a kickback payment or skim profits without providing any related service. He improperly awarded himself a contract, but then he performed that contract. Unlike the employee who takes a kickback or the investment manager who steals profits, he did something for his employer in exchange for the money that he wrongfully obtained; he provided a valuable service as a direct result of the offense. That offsetting service implicates the MVRA's focus on the victim's loss. See 18 U.S.C. § 3663A(b)(1). And because Cisco lost nothing as a result of Bhikha's self-dealing, Cisco is not entitled to additional restitution based on that self-dealing.

Contrary to Cisco's arguments, this conclusion is consistent with relevant caselaw. Because "loss" under the MVRA "is determined by comparing what actually happened with what would have happened if the defendant had acted lawfully," United States v. Hunter, 618 F.3d 1062, 1064 (9th Cir. 2010), the Court has examined the consequences

5

directly resulting from Bhikha's self-dealing and concluded that, based on the available evidence, Cisco would no better off had Bhikha never engaged in that self-dealing. If an investment manager never stole profits from his client, those profits would remain in the client's account. But if Bhikha never awarded his overseas companies the relevant contracts, there is no evidence that Cisco would have attained such significant savings.[1]

Even if the Court could not consider offsetting benefits, calculating Bhikha's profits from self-dealing would present additional factual questions that the Court would decline to resolve under the MVRA's undue burden provision. See 18 U.S.C. § 3663A(c)(3)(B); Hearing Tr. at 38. The government previously argued that Bhikha's "profits" constitute the $9,020,829.29 that he repatriated to the United States from his overseas companies. See Gov Sentencing Memo at 10. The government also provided an alternative profit calculation based on Bhikha's companies' estimated costs—an estimate extrapolated from threadbare information about how Bhikha paid a single individual who worked for the companies. Id. This all suggests that Bhikha's true costs of operating the companies are unknown. That means Bhikha's profit is unknown. And figuring out Bhikha's profit with any degree of confidence would require a significant inquiry. Therefore, even if the MVRA required the Court to measure restitution by Bhikha's unjust enrichment, rather than Cisco's loss, the Court would find that determining the amount of restitution based on Bhikha's profit "would complicate or prolong the sentencing process to a degree that the need to provide restitution . . . is outweighed by the burden on the sentencing process." 18 U.S.C. § 3663A(c)(3)(B).

The Court also rejects Cisco's factual contention that Bhikha's overseas companies charged Cisco above market value for the services that they provided. See Supp. Victim Impact Statement at 9. Of course, if the services that Bhikha's companies provided had a

---

[1] Although Gamma Tech Industries held that California law entitling an employer to the proceeds of an employee's conduct justifies a criminal restitution award reflecting the employee's proceeds from kickback payments, the Ninth Circuit was examining only traditional kickback payments from third parties. See 265 F.3d at 929. Because such kickback payments do not implicate offsetting benefits and involve no difference between a victim's loss and the defendant's unjust enrichment, Gamma Tech Industries did not address the issues raised here.

6

lower market value than the price Cisco paid for those services, then Cisco's loss would equal the difference between market value and price. But neither Cisco nor the government showed that there was such a difference. See Order Re Sentencing Findings and Restitution at 6; see also Bhikha Sentencing Memo (dkt. 128) at 25–26 (citing an expert's analysis that Cisco did not overpay for the services). As the Court's prior order explained, it is reasonable to assume that Bhikha's services were worth at least $10,060,000 given evidence that they saved Cisco tens of millions of dollars. See Order Re Sentencing Findings and Restitution at 6. In an effort to show that Bhikha's self-dealing did not earn Cisco a profit, Cisco's supplemental filing said only that it "is not possible to determine what savings were actually realized . . . because Bhikha's ability to manipulate the program criteria corrupted any realistic savings analysis." Supp. Victim Impact Statement at 9. Indeed, at Bhikha's sentencing hearing, the government acknowledged that "we will never know for certain" whether Bhikha overcharged Cisco for the services that his companies provided. Hearing Tr. at 39. The Court declines to order Bhikha to pay additional restitution based on such conjecture.

      The Court also notes that Cisco's arguments regarding fair market value rely on assumptions unwarranted here. See id. For example, Cisco argued that Bhikha received 42% of Cisco's payments to the third-party company as kickbacks, and that there "is no evidence that," after Bhikha formed his own companies, "Bhikha reduced the amount" that his companies billed to Cisco "to remove the inflation caused by [those] kickback payments." Id. It is difficult to imagine what such evidence would look like. In any event, as the Court attempted to explain in its prior order, a company can charge fair market value while making a profit. See Order Re Sentencing Findings and Restitution at 7 ("Fair market value does not equal operating cost."). Thus, even if "it is not unreasonable to assume that a natural result of paying kickbacks is inflation of the charges in order to make the scheme profitable for the payer of the kickbacks," see Gamma Tech Indus., 265 F.3d at 928, such an assumption is not always warranted. The third party that paid Bhikha kickbacks could have been charging Cisco a market rate for its services,

earning a profit, and paying part of that profit to Bhikha to secure continued business. And, once Bhikha began operating his own companies, "[i]t is just as likely that Bhikha did not need to charge above-market rates to profit individually from the scheme, and that doing so would only attract unwanted attention." Order Re Sentencing Findings and Restitution at 6. Cisco's additional arguments similarly assume that because Bhikha arranged the relevant contracts and his companies made significant profits, the companies charged Cisco an above-market rate. The Court is not persuaded.[2]

In the absence of any genuine evidence regarding fair market value, the Court continues to find that Cisco did not pay above market value for Bhikha's companies' services. And given Cisco's admission that ascertaining Cisco's savings resulting from Bhikha's self-dealing is presently "not possible," Supp. Victim Impact Statement at 9, plus the government's agreement that "we will never know" the market value of Bhikha's companies' services, Hearing Tr. at 39, the Court finds that continuing to probe this factual question "would complicate or prolong the sentencing process to a degree that the need to provide restitution to any victim is outweighed by the burden on the sentencing process," 18 U.S.C. § 3663A(c)(3)(B).

\*

This Court's task at sentencing was to correctly calculate the Guidelines range, to determine a sentence based on the relevant statutory factors, and to award restitution that compensates any victims for their losses without unduly complicating or prolonging the sentencing process. See 18 U.S.C. § 3663A(a). The parties and Cisco had the chance to present evidence, and based on that evidence the Court found that Bhikha's self-dealing did not cause Cisco any additional loss. The Court stands by its legal conclusions and factual findings while noting that any further inquiry would be unduly burdensome. See id. § 3663A(c)(3)(B). The Court has thus imposed a sentence, including a restitution order

---

[2] Cisco's arguments regarding how Bhikha's companies divvied up Cisco's payments, see Supp. Victim Impact Statement at 9, are similarly unhelpful when it comes to calculating or estimating a fair market value for the services that those companies collectively provided.

aimed at making any victims whole, without spending additional time and resources on imponderables.

**IT IS SO ORDERED.**

Dated: August 30, 2021



CHARLES R. BREYER
United States District Judge